# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☐ SUPERSEDING

## OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy; and
18 U.S.C. § 1519 - Obstruction

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: 18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment
18 U.S.C. § 1519: 20 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment

☐ +

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### DEFENDANT - U.S

STEPHEN MAGLIOCCO

DISTRICT COURT NUMBER

CR26-00101 AMO

## PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:    SHOW DOCKET NO.
   ☐ U.S. ATTORNEY ☐ DEFENSE

☐ this prosecution relates to a pending case involving this same defendant    MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    Craig H. Missakian

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Colin Sampson

### DEFENDANT

**IS *NOT* IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior summons was served on

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release fr

FILED

March 3, 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction    } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes ☐ No    } If "Yes" give date filed

**DATE OF ARREST**    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**    Month/Day/Year

☐ This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment ☒ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.    Before Judge: Kang

Comments:

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy

☐ Petty

☐ Minor

☐ Misde-meanor

☒ Felony

PENALTY: 18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment

### DEFENDANT - U.S

▶ MICHAEL DEHDASHTIAN

DISTRICT COURT NUMBER

CR26-00101 AMO

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form        Craig H. Missakian

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)        Colin Sampson

### DEFENDANT

**IS *NOT* IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (

**FILED**

March 3, 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal  ☐ State

If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?  ☐ Yes  ☐ No

} If "Yes" give date filed

_____

**DATE OF ARREST**        Month/Day/Year

_____

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**        Month/Day/Year

_____

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT        Bail Amount: _____

If Summons, complete following:

☒ Arraignment  ☒ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.        Before Judge: Kang

Comments:

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy; and
18 U.S.C. § 1519 - Obstruction

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: 18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment
18 U.S.C. § 1519: 20 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment

[+]

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### DEFENDANT - U.S

▶ ADRIAN RUIZ

DISTRICT COURT NUMBER

CR26-00101 AMO

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:    SHOW DOCKET NO.
    ☐ U.S. ATTORNEY    ☐ DEFENSE }

☐ this prosecution relates to a pending case involving this same defendant    MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person Furnishing Information on this form    Craig H. Missakian

☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Colin Sampson

### DEFENDANT

IS *NOT* IN CUSTODY
1) ☒ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed? ☐ Yes   ☐ No } If "Yes" give date filed

DATE OF ARREST ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶    Month/Day/Year

FILED
March 3, 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.    Before Judge: Kang

Comments:

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

─── OFFENSE CHARGED ───

18 U.S.C. § 371 - Conspiracy

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment

─── DEFENDANT - U.S ───

▶ RYAN DOW

DISTRICT COURT NUMBER

CR26-00101 AMO

─── DEFENDANT ───

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:   SHOW DOCKET NO.
   ☐ U.S. ATTORNEY  ☐ DEFENSE  }

☐ this prosecution relates to a pending case involving this same defendant   MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under  }

Name and Office of Person Furnishing Information on this form    Craig H. Missakian

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Colin Sampson

**IS NOT IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release f

**FILED**

March 3, 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction  }  ☐ Federal  ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes   If "Yes"
                           ☐ No    give date filed  }

DATE OF ARREST ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶    Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:

☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.    Before Judge: Kang

Comments:

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy; and
18 U.S.C. § 1519 - Obstruction

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment
18 U.S.C. § 1519: 20 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment

[+]

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### DEFENDANT - U.S

▶ LORATINA MUSCARA

DISTRICT COURT NUMBER

CR26-00101 AMO

### PROCEEDING

Name of Complainant Agency, Or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form    Craig H. Missakian

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Colin Sampson

### DEFENDANT

**IS *NOT* IN CUSTODY**

1) ☒ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior
summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (s

**FILED**

March 3, 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes
been filed?  ☐ No
} If "Yes" give date filed

**DATE OF ARREST**    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**    Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment   ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.    Before Judge: Kang

Comments:

# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT ☐ INFORMATION ☒ INDICTMENT

☐ SUPERSEDING

### OFFENSE CHARGED

18 U.S.C. § 371 - Conspiracy;
18 U.S.C. § 1952(a)(3) - Interstate Travel in Aid of
Racketeering Enterprise -- Bribery; and
18 U.S.C. § 1001(a)(2): False Statements

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY: 18 U.S.C. § 371: 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 Special Assessment; 18 U.S.C. § 1952(a)(3): 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 SA; and 18 U.S.C. § 1001(a)(2): 5 Years Imprisonment; 3 Years Supervised Release; $250,000 Fine; $100 SA; and Forfeiture ⊞

**Name of District Court, and/or Judge/Magistrate Location**

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

### DEFENDANT - U.S

▶ MICHAEL SEAN SALENE

DISTRICT COURT NUMBER

CR26-00101 AMO

### PROCEEDING

Name of Complainant Agency, Or Person (& Title, if any)

SoEun Pipal, IRS-Criminal Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of: } SHOW DOCKET NO.

  ☐ U.S. ATTORNEY ☐ DEFENSE }

☐ this prosecution relates to a pending case involving this same defendant } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under }

Name and Office of Person
Furnishing Information on this form    Craig H. Missakian

  ☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    Colin Sampson

### DEFENDANT

**IS *NOT* IN CUSTODY**
  Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
  summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction    ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
  If answer to (6) is "Yes

Has detainer ☐ Yes
been filed? ☐ No

**DATE OF ARREST** ▶    Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ▶    Month/Day/Year

FILED

March 3, 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:

☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT    Bail Amount:

If Summons, complete following:
☒ Arraignment ☒ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: 3/25/2026; 11:00a.m.    Before Judge: Kang

Comments:

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE:  OAKLAND
### CR26-00101 AMO

FILED

Mar 03 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES OF AMERICA,

V.

STEPHEN MAGLIOCCO;
MICHAEL DEHDASHTIAN;
ADRIAN RUIZ;
RYAN DOW;
LORATINA MUSCARA; and
MICHAEL SEAN SALENE

DEFENDANT(S).

# INDICTMENT

18 U.S.C. § 371 – Conspiracy to Commit Bribery and to Falsify Records to Obstruct Investigations;
18 U.S.C. § 1519 – Falsification of Records to Obstruct Investigations;
18 U.S.C. § 1952(a)(3) – Interstate Travel in Aid of Racketeering Enterprise -- Bribery;
18 U.S.C. § 1001(a)(2) – False Statements;
18 U.S.C. § 2 – Aiding and Abetting; and
18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation

A true bill.

/s/ Foreperson of the Grand Jury

Foreman

Filed in open court this 3rd_____ day of

March

Clerk

Bail, $ Summons

Hon. Lisa Cisneros, U.S. Magistrate Judge

FILED

Mar 03 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.   CR26-00101 AMO |
| Plaintiff, | VIOLATIONS: |
| v. | 18 U.S.C. § 371 – Conspiracy to Commit Bribery and to Falsify Records to Obstruct Investigations; |
| STEPHEN MAGLIOCCO; | 18 U.S.C. § 1519 – Falsification of Records to Obstruct Investigations; |
| MICHAEL DEHDASHTIAN; | |
| ADRIAN RUIZ; | 18 U.S.C. § 1952(a)(3) – Interstate Travel in Aid of Racketeering Enterprise -- Bribery; |
| RYAN DOW; | |
| LORATINA MUSCARA; and | 18 U.S.C. § 1001(a)(2) – False Statements; |
| MICHAEL SEAN SALENE, | 18 U.S.C. § 2 – Aiding and Abetting; and |
| Defendants. | 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c) – Forfeiture Allegation |
| | OAKLAND VENUE |

I N D I C T M E N T

The Grand Jury charges:

At all times relevant to this Indictment, unless otherwise indicated, and with all dates being approximate and all date ranges both approximate and inclusive:

Background and Role of Alcohol and Tobacco Tax and Trade Bureau ("TTB")

1. After the ratification of the Twenty-First Amendment to the United States Constitution in 1933, the retail sale and consumption of alcoholic beverages became legal again in the United States. The Twenty-First Amendment authorized states to institute laws to control the production, distribution, and sale of alcoholic beverages within their borders. Many states, including California, opted for a so-

INDICTMENT                    1

called "three-tier system" consisting of: (i) manufacturers or importers of distilled spirits and wine ("suppliers"); (ii) wholesalers (also known as "distributors"); and (iii) retailers.

2.     Congress passed the Federal Alcohol Administration Act ("FAAA") in 1935.  The Alcohol and Tobacco Tax and Trade Bureau ("TTB") was created in January of 2003, when the Bureau of Alcohol, Tobacco and Firearms was reorganized under the Homeland Security Act of 2002.  TTB is a bureau of the United States Department of the Treasury which, among other things, regulates alcohol beverage "industry members" (including any person engaged in business as a manufacturer, importer, or wholesaler of distilled spirits, wine or malt beverages).

3.     TTB issues permits to alcohol beverage wholesalers ("distributors") and importers/manufacturers (hereafter "suppliers"), among other industry members.

4.     Under the trade practice regulations administered by TTB, alcohol beverage wholesalers and retailers are considered "trade buyers."

5.     A subset of regulations administered by TTB, known as the "trade practice regulations," prohibit members of the alcohol beverage industry from, among other things, engaging in certain marketing practices which threaten the independence of a trade buyer or unfairly advantages that industry member over their competitors.  These trade practice regulations prohibit activities that, directly or indirectly, effect control over trade buyers by causing them to purchase less of a competing product or puts the independence of a trade buyer at risk, including "commercial bribery," a practice involving an industry member offering a bribe to a trade buyer to purchase or promote a certain product to the detriment and exclusion of competing products.

6.     TTB investigators conduct investigations into violations of trade practice regulations. TTB has a right of access to inspect, copy, and examine records and documentation kept and maintained by permit holders, including documents related to the sale and marketing of alcohol products.  With respect to non-permit holders, administrative subpoenas for TTB investigations must be approved by a delegate of the Administrator of TTB before they are served.

7.     The State of California's Alcoholic Beverage Control ("ABC") issues licenses to alcohol beverage suppliers, importers, warehousers, and wholesalers of alcohol beverages, among other categories.

1

Identification and Roles of Participants

2

*Retailer-1, Its Brands, and Its Employees*

3    8.    Retailer-1 is a large national company which owns several grocery store brands,

4  including several in California.  Retailer-1A is one of those brands, constituting the Western region of a

5  large national grocery store brand owned by Retailer-1, with headquarters in Boise, Idaho, and corporate

6  offices in Pleasanton, California.  Retailer-1B is another grocery brand and includes approximately 300

7  stores in Northern California.  After approximately 2017, brands under Retailer-1, including Retailer-1A

8  and Retailer-1B, shared many of the same corporate policies.  Retailer-1 prohibited employees from

9  making decisions where their personal financial interests, among other things, created a conflict of

10  interest with the company.  Retailer-1 required supervisory approval of an employee's receipt of gifts or

11  receipt of other valuable items or experiences from outside entities doing business with Retailer-1.

12  Retailer-1's employee handbook required employees to report company policy violations to the

13  company.

14    9.    PATRICK BRIONES[1] was a resident of Newport Beach, California.  From at least 2017

15  until approximately June 2024, BRIONES was the lead wine buyer for Retailer-1A's approximately 300

16  Southern California grocery stores owned by Retailer-1.

17    10.    INDIVIDUAL-4 was a resident of Dublin, California.  From at least 2017 until

18  approximately December 2021, INDIVIDUAL-4 managed a team of alcohol buyers for approximately

19  300 grocery stores constituting the Western Region of Retailer-1B.

20  *DISTRIBUTOR-1 and Its Employees*

21    11.    DISTRIBUTOR-1 was a company incorporated in Delaware with headquarters in Miami,

22  Florida, and offices for its California operations including Union City, California, and Cerritos,

23  California.  DISTRIBUTOR-1 is a large national distributor of alcohol for on-premises consumption,

24  such as restaurants and bars, and off-premises consumption, such as grocery or liquor stores.

25  DISTRIBUTOR-1 was licensed by the State of California as an importer of beer, wine, and distilled

26  spirits, and a wholesaler of the same.  DISTRIBUTOR-1 also possessed one or more valid wholesaler

27

28

---

[1] *See* Case No. 4:25-CR-00302 YGR (N.D. Cal.), ECF 9.

permits from TTB, among other permits. Employees of DISTRIBUTOR-1's finance department were located in Union City, California, within the Northern District of California, where invoices from vendors and employee expense reports, including supplier "bill-backs,"[2] were processed.

12.     Defendant ADRIAN RUIZ was an employee of DISTRIBUTOR-1 based in Cerritos, California. From at least 2020 until approximately early 2025, RUIZ was a Senior Vice President of DISTRIBUTOR-1's California Chain Division, and managed approximately five Vice Presidents that handled Portfolios and Customer Strategy under the Chain Division responsible for selling the alcohol products of suppliers of DISTRIBUTOR-1 to grocery store chains in California.

13.     Defendant MICHAEL DEHDASHTIAN was an employee of DISTRIBUTOR-1 based in Cerritos, California. From approximately 2020 onward, DEHDASHTIAN was one of the Vice Presidents in the Chains Division working under RUIZ for DISTRIBUTOR-1 based in Cerritos, California, responsible for sales to large chain retailers, including Retailer-1A. One of DEHDASHTIAN's responsibilities was to act as a point of contact and liaison with alcohol buyers from Retailer-1A, including BRIONES and others.

14.     Defendant STEPHEN MAGLIOCCO was a Vice President in the Chain Division working under RUIZ for DISTRIBUTOR-1 based in Cerritos, California, and was in charge of a group of Account Executives responsible for selling the brands and labels of certain alcohol suppliers to grocery store chains in Southern California, including suppliers identified as SUPPLIER-8, SUPPLIER-11, SUPPLIER-13, SUPPLIER-14, and others.

15.     Defendant RYAN DOW was an employee of DISTRIBUTOR-1 based in Cerritos, California. From 2020 until approximately late 2024, DOW was the Director of Sales working under RUIZ, responsible for sales to certain grocery store brands in Southern California, including Retailer-1A. Prior to his role as Director of Sales, DOW was an Account Executive under MAGLIOCCO. One of DOW'S responsibilities was to act as a point of contact and liaison with alcohol buyers from Retailer-1A, including BRIONES and others.

---

[2] A bill-back is an accounting or billing method whereby costs for expenses or services are invoiced back to a client, or credited against future purchases.

16.     Defendant LORATINA "TINA" MUSCARA was a resident of Livermore, California. From at least 2017 and until approximately 2023, MUSCARA was the Director of Sales in the Chain Division for DISTRIBUTOR-1 based in Union City, California.  MUSCARA's responsibilities included acting as a point of contact between DISTRIBUTOR-1 and the alcohol buyers from Retailer-1B, including INDIVIDUAL-4, the Sales Manager in charge of a team of wine and spirits buyers.

17.     INDIVIDUAL-9 was a Vice President of Chains of DISTRIBUTOR-1 and based in DISTRIBUTOR-1's Cerritos, California office.  INDIVIDUAL-9's roles included acting as a liaison with chain stores buying alcohol from DISTRIBUTOR-1, including Retailer-1A.

*Suppliers and their Employees*

18.     BRYAN BARNES[3] was a Senior Director of Sales of a large national alcohol supplier, identified as SUPPLIER-1.  SUPPLIER-1 was an industry member under the TTB Regulations and was distributed by DISTRIBUTOR-1 in California and other states.  Some of SUPPLIER-1's wine brands were purchased and sold by Retailer-1A, Retailer-1B, and others.

19.     JOHN HERZOG[4] was associated with and represented an alcohol supplier, identified herein as SUPPLIER-2, as well as other alcohol brands.  SUPPLIER-2 was an industry member under TTB regulations and was distributed in California by DISTRIBUTOR-1 in California and other States.  Some of SUPPLIER-2's brands were purchased and sold by Retailer-1A, Retailer-1B, and others.

20.     Defendant MICHAEL SEAN SALENE was an employee of an alcohol supplier based in Napa, California, within the Northern District of California, identified as SUPPLIER-11.  SUPPLIER-11 was an industry member under TTB regulations and was distributed by DISTRIBUTOR-1 in California and other states.  Some of SUPPLIER-11's brands were purchased and sold by Retailer-1A, Retailer-1B, and others.

21.     MATTHEW ADLER[5] was a Regional Manager for SUPPLIER-1 based in Walnut Creek, California.  ADLER managed SUPPLIER-1's pricing and inventory with Northern California Vice

---

[3] *See* Case No. 4:25-CR-00052 YGR (N.D. Cal.), ECF 9.

[4] *See* Case No. 4:25-CR-00306 YGR (N.D. Cal.), ECF 5.

[5] *See* Case No. 4:25-CR-00051 YGR (N.D. Cal.), ECF 12.

Presidents of DISTRIBUTOR-1 that managed on-premise retailers, and managed a marketing budget of approximately $1,000,000 per year.

*Vendors and Associated Individuals*

22.     VENDOR-1 was an entity operating in Novato, California, within the Northern District of California.  VENDOR-1 was controlled by an individual that had previously worked for DISTRIBUTOR-1 in its Union City office.  VENDOR-1 provided services as an approved vendor of DISTRIBUTOR-1.

23.     J. GO EVENTS, INC. ("J.GO") was a company registered in California since on or about December 18, 2017.  JESSICA GOEBEL[6] owned and managed J.GO.  Until approximately March 2020, GOEBEL was a resident of Alameda County, California, within the Northern District of California.  J.GO provided services as an approved vendor of DISTRIBUTOR-1 and some of its suppliers.

24.     VENDOR-3 was a company registered in California on or about May 2, 2003.  INDIVIDUAL-7 owned and managed VENDOR-3.  VENDOR-3 provided services as an approved vendor to DISTRIBUTOR-1 and some of its suppliers.  The spouse of INDIVIDUAL-7 was an executive of DISTRIBUTOR-1.

25.     VENDOR-4 was a company registered in Oregon on or about September 3, 2010.  VENDOR-4 provided services as an approved vendor to DISTRIBUTOR-1 and some of its suppliers.  The original three principals of VENDOR-4 were spouses of DISTRIBUTOR-1 employees.

26.     VENDOR-1, J.GO, VENDOR-3, and VENDOR-4 each billed DISTRIBUTOR-1 with invoices that identified DISTRIBUTOR-1's alcohol suppliers.  In many instances, invoices issued by VENDOR-1, J.GO, VENDOR-3, and VENDOR-4 to DISTRIBUTOR-1 required payment approval from the specific alcohol supplier.  VENDOR-1, J.GO, VENDOR-3, and VENDOR-4 charged a fee of approximately 10% for their services.

27.     J.GO, VENDOR-3, and VENDOR-4's services included procurement of personal electronics, luxury items and prepaid gift cards, as well as planning flights, hotel reservations, golf

---

[6] *See* Case No. 4:25-CR-00373 YGR (N.D. Cal.), ECF 5.

outings, and travel to resorts for employees of alcohol retailers such as BRIONES, employees of

DISTRIBUTOR-1 and alcohol suppliers, and their friends and family members.  J.GO and VENDOR-3

at times invoiced numerous alcohol suppliers to fund retreats and vacations planned by employees of

DISTRIBUTOR-1 and its suppliers.  J.GO, VENDOR-3, and VENDOR-4 further billed

DISTRIBUTOR-1 and alcohol suppliers with invoices containing false and misleading descriptions, and

held the proceeds as "travel funds" or "travel vouchers," but were in fact intended for the personal use,

among other things, of employees of DISTRIBUTOR-1 and alcohol suppliers distributed by

DISTRIBUTOR-1.  VENDOR-4 further issued cash payments, by check and money transfer, to

employees of DISTRIBUTOR-1 and its suppliers.

<u>COUNT ONE</u>: (18 U.S.C. § 371 – Conspiracy to Falsify Records to Obstruct Investigations and to Commit Commercial Bribery)

28.    Paragraphs 1 through 27, above, are incorporated and realleged as if fully set forth here.

29.    Beginning at a time unknown to the Grand Jury, but no later than on or about February 28, 2016, and continuing until at least on or about March 11, 2024, in the Northern District of California and elsewhere, the defendants,

STEPHEN MAGLIOCCO,
MICHAEL DEHDASHTIAN,
ADRIAN RUIZ,
RYAN DOW, and
LORATINA MUSCARA,

and others known and unknown to the Grand Jury, did knowingly, willfully, voluntarily, intentionally

and knowingly conspire, combine, confederate, and agree with one another and with other persons, to

commit commercial bribery, and to alter, conceal, cover up, falsify, and make a false entry in records,

documents, and other objects, to wit, invoices, receipts, folios, and other payment documentation related

to alcohol industry members containing false and materially misleading descriptions of services and

expenses, with the intent to impede, obstruct, and influence the investigation and the proper

administration of a matter within the jurisdiction of a department and agency of the United States,

namely, the Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau, in relation to or

contemplation of any such matter or case.

30.    Beginning in or around 2018, TTB investigators initiated an investigation into prepaid gift cards valued at up to $1,000 each used by alcohol industry members to commit trade practice violations, including commercial bribery.  Investigators interviewed the owner of VENDOR-1, among other individuals.  By July 2019, J.GO and VENDOR-3 were provided letters from the Controller of DISTRIBUTOR-1's California offices, stating that gift card purchases would no longer be approved.

31.    Employees of DISTRIBUTOR-1, some of their suppliers, and others, understood that DISTRIBUTOR-1, as a permit holder for the wholesale of alcohol, was prohibited from paying bribes to employees of trade buyers to purchase certain alcohol brands to the exclusion of other alcohol brands. Employees of DISTRIBUTOR-1, their suppliers and others, further understood that DISTRIBUTOR-1 was subject to audit and inspection by TTB to ensure compliance with trade practice regulations administered under Title 27 of the United States Code.

32.    As a result, the Defendants and their coconspirators devised and joined a bribery and obstruction scheme with each other, and others known and unknown to the Grand Jury.  The objects of the conspiracy were (1) to provide commercial bribery payments to employees of alcohol buyers at large retail chains within California and elsewhere to increase the purchases of certain alcohol brands; and (2) to impede and obstruct any actual or contemplated investigation of the bribes, including by creating and maintaining false invoices generated by third parties, and false documentation to support bill-backs from DISTRIBUTOR-1 to certain alcohol suppliers, thereby concealing the true nature of the bribes, with this matter being within the jurisdiction of TTB and Internal Revenue Service-Criminal Investigation.

<u>Manner and Means</u>

33.    It was part of the conspiracy that, certain Defendants and their coconspirators, including DEHDASHTIAN and DOW, during regular meetings with grocery chain alcohol buyers, including BRIONES, certain Defendants and their coconspirators, including DEHDASHTIAN and DOW, identified alcohol brands distributed by DISTRIBUTOR-1 which would come with bribe payments.

34.    BRIONES conducted new item placement meeting approximately twice per year during Spring and Fall with ████ employees, including DEHDASHTIAN, DOW, and Account Executives (AEs) assigned to certain suppliers.  DEHDAHSTIAN, DOW, and others, presented their requests for new alcohol products to be added to Retailer-1A's store locations on behalf of the suppliers they

represented, including SUPPLIER-1, SUPPLIER-2 and SUPPLIER-11. The discussions of bribe payments between BRIONES and DISTRIBUTOR-1 employees, including DEHDASHTIAN and DOW, often happened after the AEs made their new item presentations and were excused. DEHDASHTIAN and/or DOW frequently stayed in the room with BRIONES to discuss which items presented came with bribes.

35.    At least once per season, BRIONES' prepared Retailer-1A's planners. During the meetings with BRIONES, Distributor-1 employees, including DEHDASHTIAN, DOW, and MAGLIOCCO, sometimes accompanied by employees of certain suppliers, explained to BRIONES the amount of the bribe payment for placing or displaying certain products.  Planner meetings typically occurred in person, sometimes during new item meetings.  Discussion of the terms of the bribes also took place by telephone or by text message.

36.    These bribes often consisted of multiple prepaid gift cards valued at up to $1,000 each, cash, and other items of value, including watches, suits, valuable consumer electronics, and sports equipment; these bribes also consisted of flights, hotel reservations, golf outings, and travel to resorts. The coconspirators funded these bribes by directing vendors to falsify invoices sent to DISTRIBUTOR-1 or to the supplier, or through a bill-back from DISTRIBUTOR-1 to the supplier.

37.    The coconspirators concealed the bribe payments from TTB by directing third-party vendors to procure prepaid gift cards, trips, luxury items and services by issuing invoices containing false and misleading descriptions purporting to be for legitimate and compliant expenses, such as marketing, merchandising, or education.  For example, employees of DISTRIBUTOR-1, including certain Defendants and their coconspirators, often procured the items of value and planned these trips with the assistance of certain vendors, including J.GO, VENDOR-3, and VENDOR-4.  Specifically, employees of DISTRIBUTOR-1 and certain alcohol suppliers distributed by DISTRIBUTOR-1 directed the vendors to generate falsified invoices to alcohol suppliers and/or DISTRIBUTOR-1 to conceal the true nature of the expenses, which included airfare, luxury vacations, prepaid gift cards valued at up to $1,000 each, casino chips, expensive meals, luxury watches, golf equipment, electronics, and services.

38.    To fund bribe-related travel and expenses, DISTRIBUTOR-1 employees, including MAGLIOCCO and RUIZ, and others, forged resort folios that appeared to be for legitimate business

expenses, and submitted them through DISTRIBUTOR-1's finance office for reimbursement and bill-backs to specific suppliers.

39.    Employees of DISTRIBUTOR-1, including MAGLIOCCO, DEHDASHTIAN, RUIZ, DOW, and MUSCARA, and coconspirators, including ADLER, BARNES, HERZOG, and others, knowingly approved payments to vendors, including VENDOR-1, J.GO, VENDOR-3, and VENDOR-4, pursuant to false invoices, and submitted false bill-backs.

40.    By maintaining false records, such as invoices and false bill-back documentation and descriptions, and by using non-permit holding third-party vendors, Defendants and their coconspirators concealed bribes and other prohibited expenditures incurred by industry members for the benefit of employees and representatives of trade buyers, in violation of federal laws and regulations enforced by TTB.

<u>Overt Acts</u>

41.    Employees of DISTRIBUTOR-1, including MAGLIOCCO, DEHDASHTIAN, RUIZ, DOW, and MUSCARA, and representatives of alcohol suppliers, perpetuated the bribes by, among other things: (1) Directing employees of alcohol suppliers, including ADLER, BARNES, and HERZOG, to engage directly with third-party vendors such as J.GO, VENDOR-3, and VENDOR-4 to procure gift cards, trips, and other valuable items, and to generate and maintain falsified records that concealed the expenses by false and misleading descriptions; and (2) Seeking approval from suppliers for repayment of expenses, including bill-backs, to fund bribes paid to alcohol retailer employees, including INDIVIDUAL-4 and BRIONES, on behalf of DISTRIBUTOR-1 and its suppliers, and to generate and maintain falsified records, including hotel folios, that concealed the expenses by false and misleading descriptions and documentation:

     a.    On or about March 19, 2019, an employee of SUPPLIER-3, identified as INDIVIDUAL-14, issued a purchase order and directed J.GO to invoice (No. 6550) SUPPLIER-3 a total of $9,215 with a false invoice description including "Anti-theft Merchandising Incentive." In truth and in fact, INDIVIDUAL-14 directed J.GO to hold the proceeds of the invoice in their "bank" for spending at INDIVIDUAL-14's direction. With those proceeds procured from the falsified invoice, among other spending, INDIVIDUAL-14 directed J.GO to

send thousands $1,000 prepaid gift cards to DOW, MUSCARA, and others, and to purchase monogrammed purses valued at $285 each with the initials of, among others, MUSCARA, INDIVIDUAL-4, and another alcohol buyer employed by Retailer-1A.

b.      On or about August 20, 2019, an employee of alcohol supplier identified as SUPPLIER-16 directed J.GO to provide MAGLIOCCO with $14,200 worth of prepaid gift cards.  J.GO mailed the gift cards to MAGLIOCCO and issued a false and misleading invoice (No. 6887) for $15,708.99 to SUPPLIER-16 that described the expense as "H1 Chain Programming."

c.      On or before January 6, 2020, INDIVIDUAL-9 directed VENDOR-3 to arrange a vacation for BRIONES, INDIVIDUAL-9, and their spouses to a resort in Maui, Hawaii.  The total cost of the trip came to approximately $16,283.56, including approximately $7,500 for BRIONES' suite, flights, dinners and spa activities.  VENDOR-3 used the proceeds it held from a false and misleading July 31, 2019, invoice for $30,000 that VENDOR-3 issued to DISTRIBUTOR-1 that described the expense as "Retailer-1A Seminar August 2019." According to a document obtained during the investigation, the $30,000 invoice was billed back to SUPPLIER-4.

d.      On or about June 15, 2020, J.GO arranged for prepaid Visa gift cards worth $10,000 to be shipped by UPS delivery to BARNES.  Barnes directed J.GO to purchase and mail the gift cards and to submit a false and misleading invoice (No. 7276) with the description "[Retailer-1A] New Items and April/May Planners" to SUPPLIER-1 for approximately $11,065. BARNES authorized payment of this invoice.  BARNES then distributed the majority of these prepaid Visa cards to BRIONES and to employees of DISTRIBUTOR-1, including DEHDASHTIAN.  BRIONES agreed to purchase new SUPPLIER-1 items and to add SUPPLIER-1 items to the Retailer-1A planner.

e.      On or about September 14, 2020, J.GO issued an invoice (No. 7337) to SUPPLIER-1 for $21,000 with the false and misleading description "[Retailer-1A] Wave 3 New Items and Nov Planner Incentive." October 16, 2020, at the direction of BARNES, J.GO ordered 19 visa gift cards in $1,000 denominations to be shipped to BARNES' residence in Hermosa

Beach, California.  BARNES used the gift cards to provide bribe payments to BRIONES via DISTRIBUTOR-1 employees, including DEHDAHSTIAN.

f.     MUSCARA requested an employee of SUPPLIER-3 to provide her with funds to take INDIVIDUAL-4 and her family member to a Napa winery and restaurant for that family member's birthday.  The employee of SUPPLIER-3 then directed J.GO to purchase and ship to MUSCARA a $750 prepaid gift card.  On or about March 21, 2021, MUSCARA spent the $750 gift card, and additional charges of at least $316.90, at a Napa winery and restaurant in Yountville, California with INDIVIDUAL-4 and INDIVIDUAL-4's family member. MUSCARA subsequently submitted an expense report for the additional charges to DISTRIBUTOR-1 with the false and misleading description of "[Retailer-1B] Northern California Reorganization."

g.     On or about June 16, 2021, MAGLIOCCO directed a subordinate to purchase golf clubs worth approximately $1,537 using personal funds, and to conceal the bribe by using a falsified hotel folio for the purpose of issuing a bill-back to SUPPLIER-8 for reimbursement. Magliocco created the falsified and misleading hotel folio and provided the document to his subordinate to submit for reimbursement.  In exchange, BRIONES agreed to purchase a SUPPLIER-8 prosecco.

h.     On August 24, 2021, MUSCARA sent a text message to HERZOG stating: "Took [INDIVIDUAL-4] to spa for her birthday any chance that you can sponsor bill-back [let me know]."  MUSCARA ultimately billed back the charges including charges for a friend of INDIVIDUAL-4 to three other suppliers with the false and misleading description "[Retailer-1B] meeting expense for holiday planning."

i.     On or about December 4, 2021, DEHDAHSTIAN, RUIZ, BRIONES, and two employees of an alcohol supplier identified as SUPPLIER-7, traveled to Las Vegas, Nevada to attend an NFL football game and for entertainment at restaurants and clubs.  RUIZ later sent a December 6, 2021, email to an employee of SUPPLIER-7 for approval of a bill-back of approximately $6,525 for a "planning meeting."  The SUPPLIER-7 employee approved the expense, which RUIZ then forwarded with an altered and falsified $5,662 folio purporting to be

from a Newport Beach, California, resort for one night of lodging and meeting room expenses to DISTRIBUTOR-1's finance office for reimbursement.

j.      On or about January 25, 2022, MAGLIOCCO, DOW, and others coordinated a golf trip to Monterey County, California from February 7, 2022, through February 10, 2022. To fund the deposit for the trip, MAGLIOCCO submitted a reimbursement request for $11,020, with expenses allocated to SUPPLIER-8, SUPPLIER-14, and others, using a falsified Newport Beach, California hotel folio.  To cover the final golf resort folio, MAGLIOCCO submitted a reimbursement request for $24,893.72, with expenses allocated to SUPPLIER-14.  BRIONES, MAGLIOCCO, DOW, another DISTRIBUTOR-1 employee, and SUPPLIER-14 employees attended the trip, which included BRIONES' greens fees, hotel room, and meals.  Thereafter, SUPPLIER-14 received new items and prominent placements on the planners for Retailer-1A stores.

k.      On or about January 27, 2022, DOW issued multiple bill-backs to suppliers requesting approval of expenditures falsely described as "[Retailer-1A] meeting."  This included a $999.95 bill-back to SUPPLIER-9 and a $1,999.89 bill-back issued to SUPPLIER-4, among others. In truth and in fact, DOW and other employees of DISTRIBUTOR-1, and others, knew that the true purpose of these bill-backs were for DISTRIBUTOR-1 to facilitate BRIONES's attendance at an NFL conference championship game.

l.      On or before November 2, 2022, DEHDASHTIAN and DOW informed BARNES that DISTRIBUTOR-1 could no longer use VENDOR-3 to arrange trips.  BARNES directed J.GO to arrange a trip to Las Vegas for himself, DEHDASHTIAN, DOW, and BRIONES,  to include luxury accommodations, golfing fees of at least $750 per person, and incidentals. BARNES further directed J.GO to purchase and ship to him seven prepaid $1,000 Visa gift cards, at least one of which he provided to BRIONES in Las Vegas, Nevada.  To fund the trip, BARNES directed J.GO to invoice SUPPLIER-1 for $15,866.51 (No. 7913) with the false and misleading description of "[Retailer-1] H1 Planning Meeting."

m.      On or about January 19, 2023, DEHDAHSTIAN, RUIZ, and BRIONES, traveled from California to an exclusive golf club in Hobe Sound, Florida for the purpose of taking

BRIONES golfing with a representative of an alcohol supplier identified as SUPPLIER-17.  To fund expenses related to the trip, and to conceal the bribe to BRIONES, RUIZ falsified a hotel folio dated January 30, 2023, and issued a bill-back for $11,176.18 to SUPPLIER-17 for reimbursement.

n.      On or about January 20, 2023, DEHDASHTIAN and RUIZ exchanged text messages about the funding and concealment of additional expenses that BRIONES may incur during the trip to Hobe Sound, Florida.  RUIZ stated "If PB wants to shop more let's bill-back [SUPPLIER-10] or [SUPPLIER-1.]"

o.      On or about February 23, 2023, DEHDASHTIAN sent another DISTRIBUTOR-1 employee a text message and asked "would you be able to swing a $2 billback for me from [supplier] in Miami with PB [BRIONES]?"  DEHDASHTIAN later clarified "2k," meaning $2,000.  The DISTRIBUTOR-1 employee replied "we have the funding brother. I will work on this first thing…." After discussion about going to a "secret spot" DEDASHTIAN replied "maybe $3,500."

p.      On or about January 17, 2024, DEHDAHSTIAN, RUIZ, and BRIONES, again traveled from California to an exclusive golf club in Hobe Sound, Florida for the purpose of taking BRIONES golfing with a representative of SUPPLIER-17.  To fund expenses related to the trip, and to conceal the bribe to BRIONES, RUIZ falsified a hotel folio dated January 22, 2024, and issued a bill-back for $6,309.60 to SUPPLIER-17 for reimbursement.

q.      On or about January 16, 2024, MAGLIOCCO directed a subordinate to withdraw approximately $2,000 in cash from their personal account and to pay it to BRIONES as a bribe. To conceal the bribe and prevent a record of the bribe payment to BRIONES, MAGLIOCCO then directed the subordinate to submit a reimbursement request using a forged folio from a hotel resort that MAGLIOCCO created for the subordinate, which DISTRIBUTOR-1 then billed back to SUPPLIER-13.

r.      On or about March 11, 2024, while discussing a future golf trip with BRIONES to a resort in Newport Beach, California, DOW sent a text message to BRIONES and stated "I can bill back whatever [BARNES] needs me to." DOW then requested that BARNES "keep

[BRIONES] off any invite." DOW then confirmed to BRIONES that BRIONES' name was not on any documents.

All in violation of Title 18, United States Code, Section 371.

<u>COUNTS TWO THROUGH SEVEN</u>: (18 U.S.C. § 1519 and 18 U.S.C. § 2 – Falsification of Records to Obstruct Investigations and Aiding and Abetting)

42.    Paragraphs 1 through 41(r) above are incorporated and realleged as if fully set forth here.

43.    On or about the dates provided below, in the Northern District of California, and elsewhere, the defendants,

STEPHEN MAGLIOCCO,
ADRIAN RUIZ, and
LORATINA MUSCARA

knowingly did alter, conceal, cover up, falsify, and make a false entry in records, documents, and objects, to wit, invoices, receipts, folios, and other payment documentation related to alcohol industry members containing false and materially misleading descriptions of services and expenses, and directing others to falsify and maintain the same, with the intent to impede, obstruct, and influence the investigation and the proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the Alcohol and Tobacco Tax and Trade Bureau and Internal Revenue Service-Criminal Investigation, and in relation to or contemplation of any such matter or case:

| COUNT | DATE | DEFENDANT | DESCRIPTION |
|---|---|---|---|
| 2 | 3/20/2021 | LORATINA MUSCARA | MUSCARA received a $750 prepaid gift card from J.GO, paid for by an employee of SUPPLIER-3. MUSCARA spent the $750 gift card, and additional charges of at least $316.90, at a Napa winery and a restaurant in Yountville, California with INDIVIDUAL-4 and INDIVIDUAL-4's family member. MUSCARA submitted an expense report to DISTRIBUTOR-1 with the false and misleading description of "[Retailer-1B] Northern California Reorganization." |
| 3 | 8/24/2021 | LORATINA MUSCARA | MUSCARA paid for INDIVIDUAL-4 to visit a spa and requested HERZOG approve a bill-back for the expense for $830.25. Bill-backs with false descriptions were sent to three other suppliers for approval. |

| COUNT | DATE | DEFENDANT | DESCRIPTION |
|-------|------|-----------|-------------|
| 4 | 12/2/2021 | ADRIAN RUIZ | RUIZ, DEHDASHTIAN, and employees of SUPPLIER-7 traveled to a resort in Las Vegas, Nevada and hosted BRIONES with hotel room, dinners, and golf. RUIZ submitted request for reimbursement for $5,662.50 with a false and misleading description for "planning meeting" with a bill-back to SUPPLIER-7. |
| 5 | 1/25/2022 | STEPHEN MAGLIOCCO | MAGLIOCCO, DOW, and others hosted BRIONES for hotel, three days of golf, and meals in Monterey County, California from February 7, 2022, through February 10, 2022. MAGLIOCCO paid a deposit and submitted a reimbursement request for $11,020, with expenses allocated to SUPPLIER-8, and others, using a falsified Newport Beach, California hotel folio. |
| 6 | 1/31/2023 | ADRIAN RUIZ | RUIZ and DEHDASHTIAN traveled with BRIONES to golf club in Hobe Sound, Florida. RUIZ submitted a reimbursement request to DISTRIBUTOR-1 with a bill-back to SUPPLIER-17 using a falsified Newport Beach, California hotel folio for $11,176.18. |
| 7 | 1/27/2024 | ADRIAN RUIZ | RUIZ and DEHDASHTIAN traveled with BRIONES to golf club in Hobe Sound, Florida. RUIZ submitted a reimbursement request to DISTRIBUTOR-1 with a bill-back to SUPPLIER-17 using a falsified Laguna Beach, California hotel folio for $6,309.60. |

Each in violation of Title 18, United States Code, Section 1519 and Title 18, United States Code, Section 2.

COUNT EIGHT:  (18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2 – Interstate Travel in Aid of Racketeering Enterprise -- Bribery -- and Aiding and Abetting)

44.    Paragraphs 1 through 41(r), above, are incorporated and realleged as if fully set forth here.

45.    On or about October 3, 2022, in the Northern District of California and elsewhere, the defendant,

MICHAEL SEAN SALENE,

1   and others known and unknown to the Grand Jury, did knowingly would and did use and cause to be

2   used the mails and facilities in interstate commerce with intent to promote, manage, establish, carry on

3   and facilitate the promotion, management, establishment and carrying on of an unlawful activity,

4   specifically, commercial bribery in violation of California Penal Code § 641.3, and thereafter would and

5   did promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and

6   carrying on of commercial bribery, used the mails and interstate wires, specifically, sending American

7   Express gift cards valued at $1,500 to PATRICK BRIONES as a bribe, billed via a false and misleading

8   VENDOR-4 invoice transmitted by email to SUPPLIER-11 in Napa, California.

9         All in violation of Title 18, United States Code, Section 1952(a)(3) and Title 18, United States

10  Code, Section 2.

11  COUNT NINE: (18 U.S.C. § 1952(a)(3) and 18 U.S.C. § 2 – Interstate Travel in Aid of
                    Racketeering Enterprise -- Bribery -- and Aiding and Abetting)

12

13        46.    Paragraphs 1 through 41(r), above, are incorporated and realleged as if fully set forth

14  here.

15        47.    On or about January 13, 2023, and continuing until at least January 15, 2023, in the

16  Northern District of California and elsewhere, the defendants,

17                            MICHAEL SEAN SALENE,

18  and others known and unknown to the Grand Jury, did knowingly would and did travel in interstate

19  commerce and used and caused to be used facilities in interstate commerce with intent to promote,

20  manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of

21  an unlawful activity, specifically, commercial bribery in violation of California Penal Code § 641.3,

22  thereafter would and did promote, manage, establish, carry on, and facilitate the promotion,

23  management, establishment, and carrying on of commercial bribery, sent and caused others to send

24  interstate wires, specifically, emails and text messages, and offered, paid, and arranged for the payment

25  of bribes to an employee of Retailer-1A, to wit, PATRICK BRIONES, involving a cash bribe and an all-

26  expense paid trip to a resort in Las Vegas, Nevada, with employees and representatives of SUPPLIER-

27  11 and DISTRIBUTOR-1, including flight and hotel expenses, and other entertainment.

28

INDICTMENT                          17

All in violation of Title 18, United States Code, Section 1952(a)(3) and Title 18, United States Code, Section 2.

COUNT TEN:  (18 U.S.C. § 1001(a)(2) – False Statement to a Government Agency)

48.     Paragraphs 1 through 41(r) above are incorporated and realleged as if fully set forth here.

49.     On or about May 29, 2025, in the Northern District of California, and elsewhere, the defendant,

MICHAEL SEAN SALENE,

did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States by stating to a Special Agent of the Internal Revenue Service-Criminal Investigation that he did not provide flights, gift cards, or cash to PATRICK BRIONES, an employee of a trade buyer. These statements and representations were false because, as SALENE then and there knew, he had arranged through VENDOR-4 to pay for flights to Las Vegas in 2023 and to submit a false and misleading invoice to his employer, and provided cash and gift cards to BRIONES.

All in violation of Title 18, United States Code, Section 1001(a)(2).

FORFEITURE ALLEGATION:  (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

50.     The allegations contained above are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

51.     Upon conviction of any of the offenses alleged in Counts Eight and Nine, above, the defendant,

MICHAEL SEAN SALENE

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any property constituting and derived from any proceeds defendant obtained, directly or indirectly, as a result of such violations, including but not limited to a forfeiture money judgment.

52.     If any of the property described above, as a result of any act or omission of the defendant:

1         a.     cannot be located upon exercise of due diligence;

2         b.     has been transferred or sold to, or deposited with, a third party;

3         c.     has been placed beyond the jurisdiction of the court;

4         d.     has been substantially diminished in value; or

5         e.     has been commingled with other property which cannot be divided without

6               difficulty,

7 the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21,

8 United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

9 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

10     All pursuant to Title 18, United States Code, Section 981, Title 21, United States Code, Section

11 853, Title 28, United States Code, Section 2461, and Federal Rule of Criminal Procedure 32.2.

12

13 DATED:  March 3, 2026                  A TRUE BILL.

14

15                                       _____/s/_____

                                       FOREPERSON

16 CRAIG H. MISSAKIAN
United States Attorney

17

18 _/s/_____

   COLIN SAMPSON

19 Assistant United States Attorney

20

21

22

23

24

25

26

27

28